IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                            Case Nos.:  4:08cr38/RH/GRJ
                                                           4:10cv574/RH/GRJ

KEVIN LAMAR RATLIFF

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (doc. 111.)  The Government has filed a response (doc. 118) and Defendant, through counsel, filed a reply. (doc. 123.)  Eight months after filing the reply, Defendant filed a pro se motion to amend his § 2255 motion.[1] (doc. 124.)[2]  The court granted the motion and the Government has responded. (doc. 135.)[3]  Defendant has also filed a reply. (doc. 137.)

After a careful review of the record and the arguments presented, it is recommended that the § 2255 motion should be denied.

---

[1] Counsel's status at this juncture is uncertain in light of Defendant's pro se submission.

[2] The identical pleading appears at doc. 132.

[3] Despite the fact that the Government's response was filed 6 weeks after it was due, and the Government failed to consult with defense counsel before the late filing, the court accepted the submission. (doc. 136.)

## PROCEDURAL BACKGROUND

Defendant was charged in two counts of a four count indictment with conspiracy to possess with intent to distribute more than fifty (50) grams of cocaine base and possession with intent to distribute more than fifty (50) grams of cocaine base on a date certain. (doc. 17.)   The Government filed an Information and Notice of Intent in which it listed two prior felony drug convictions for possession of cocaine. (doc. 36.)

The charges stemmed from an investigation of another individual, Benson Leon Devane, Jr., who had agreed to enter into a drug transaction with a cooperating witness at a Whataburger restaurant in Tallahassee Florida.[4]  Devane, accompanied by Defendant in the passenger seat, drove into the Whataburger parking lot and was immediately surrounded by law enforcement.  Officers seized 80 grams of cocaine base and 27.1 grams of marijuana from Devane, recovered a 9mm semi-automatic pistol from plain view between the front seats of the vehicle, and seized additional crack and powder cocaine from the interior of the vehicle.  Ten small bags of cocaine base that appeared to be packaged for individual sale with a total weight of approximately 6.5 grams were located under Defendant's hat, and he had an additional 3.8 grams of marijuana in his pocket as well as $200.58 in cash.  Defendant initially tried to deny his involvement, claiming that he picked up the cocaine base as officers approached. When told that he had been under direct observation the entire time, he admitted that Devane gave him the drugs in exchange for Defendant riding with him, and suggested

---

[4] The factual background is summarized from information contained in the PSR and the trial transcript in this case.

that he was there for Devane's protection. Defendant testified in his own behalf at trial. He accused law enforcement of lying and denied any involvement in the conspiracy and that he possessed any crack cocaine.

The jury convicted Defendant of both counts and found that the offense conduct involved between five and 50 grams of cocaine base, which was the amount seized directly from Defendant's person and not the cocaine base seized from Devane. (doc. 58.)

The Presentence Investigation Report ("PSR") was disclosed to the defense on November 12, 2008. (doc. 64.) Defendant was held accountable for the entire 190.7 grams of powder cocaine and 86.5 grams of cocaine base seized incident to his and Devane's arrest. (PSR ¶ 24.) This was equivalent to 1,768.1 kilograms of marijuana[5] and had a corresponding base offense level of 30. (*id*.) Two two-level increases were applied due to the possession of a firearm and obstruction of justice, so that Defendant's adjusted offense level was 34. (PSR ¶¶ 25, 28, 29.) However, because the Defendant was a career offender, Defendant's offense level became 37. (PSR ¶30, 32.) Defendant's criminal history category was VI whether calculated based on his 21 criminal history points or on his career offender status. (PSR ¶ 46.) The applicable guideline imprisonment range was 360 months to life.

Defendant objected to the two level adjustments for obstruction of justice and possession of a dangerous weapon as well as to the amount of drugs attributed to him.

---

[5]The Drug Equivalency Table located in application note 8 to section § 2D1.1 of the Guidelines provides a means for combining different controlled substances to obtain a single offense level by using a "marijuana equivalent."

(PSR ¶¶ 86–91; doc. 84 at 3–6.) The court overruled the objection as to the obstruction of justice, finding Defendant's testimony at trial to have been willfully false. (doc. 84 at 11–12.) The court also found that Defendant was properly held accountable for the firearm that had been in plain view and that the quantity of drugs attributed to him was correctly calculated. (*id*. at 12–14.) The court sentenced Defendant to a term of 360 months imprisonment. (*id.* at 19, 23.)

Defendant appealed, raising two issues. He argued that the prosecutor improperly impeached him during cross examination by asking about his prior felony conviction for aggravated battery with a deadly weapon, and that the prosecutor improperly made reference during closing arguments to the fact that Defendant had $200 in cash in his possession at the time of his arrest although he was unemployed. (doc. 98 at 4.) The Eleventh Circuit found no error and affirmed Defendant's convictions. (*id*. at 8.)

In the present motion, as supplemented, Defendant raises four claims of ineffective assistance of counsel. The Government opposes the motion in its entirety.

**LEGAL ANALYSIS**

### *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8

(11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of

constitutional rights and for that narrow compass of other injury that could not have

been raised in direct appeal and would, if condoned, result in a complete miscarriage of

justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations

omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v.

Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged

constitutional violation "has probably resulted in the conviction of one who is actually

innocent . . . ."

 The law is well established that a district court need not reconsider issues raised

in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United

States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340,

1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot

be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343

(quotation omitted).  Broad discretion is afforded to a court's determination of whether a

particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16

(1963) ("identical grounds may often be proved by different factual allegations . . . or

supported by different legal arguments . . . or couched in different language . . . or vary

in immaterial respects").

 Furthermore, a motion to vacate under section 2255 is not a substitute for direct

appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred.  Lynn,

365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v.

United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  Lynn,

365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the

ground of error was unavailable on direct appeal, a court may not consider the ground

in a section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that

is, alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523

U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must

show that "some objective factor external to the defense prevented [him] or his counsel

from raising his claims on direct appeal and that this factor cannot be fairly attributable

to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of

ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

    Ineffective assistance of counsel claims are generally not cognizable on direct

appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503

(2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).

The benchmark for judging a claim of ineffective assistance of counsel is "whether

counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result."  Strickland v.

Washington, 466 U.S. 668, 686 (1984).  To show a violation of his constitutional right to

counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")).  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an

experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993); <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. *See* <u>Boyd v. Comm'r, Ala. Dep't of Corr.</u>, 697

F.3d 1320, 1333–34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 F. App'x 804, 807

(11th Cir. 2012) (citing <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v.</u>

<u>United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551,

1559 (11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing

<u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v.</u>

<u>Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d

1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether

counsel was inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory." <u>United States</u>

<u>v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing

"unless the motion and files and records conclusively show that the prisoner is entitled

to no relief," a defendant must support his allegations with at least a proffer of some

credible supporting evidence.  *See* <u>Chandler v. McDonough</u>, 471 F.3d 1360, 1363 (11th

Cir. 2006) (citing <u>Drew v. Dep't of Corr.</u>, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring

to "our clear precedent establishing that such allegations are not enough to warrant an

evidentiary hearing in the absence of any specific factual proffer or evidentiary

support"); <u>Hill v. Moore,</u> 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an

evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner

must proffer evidence that, if true, would entitle him to relief.")); <u>Ferguson v. United</u>

<u>States</u>, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous

claims, conclusory allegations unsupported by specifics, or contentions that are wholly

unsupported by the record.  <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir.

2004); <u>Tejada</u>, 941 F.2d at 1559; <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th

Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than

conclusory allegations do not warrant a hearing.  <u>Lynn</u>, 365 F.3d at 1239.

With these standards in mind, the court will consider Defendant's claims in the

order in which they were presented.

### *Ground One: Failure to Suppress pre-Miranda and post-Miranda Statements*

Defendant first asserts that counsel was constitutionally ineffective because he

failed to move to suppress a "statement" made before his <u>Miranda</u> rights were given as

well as one made after his <u>Miranda</u> rights were involuntarily waived.

The first "statement" related to the fact of Defendant's lack of employment.  After

Defendant's arrest, Officer Michael Clear interviewed Defendant and asked him some

background questions in order to fill out a standard DEA 202 form, which Clear

described as "an arrest background information sheet." (doc. 80 at 81.)[6] One of the

questions pertained to Defendant's employment. Clear testified that Defendant told him

that he was not employed, and when Clear asked what kind of work Defendant

performed when he was employed, Defendant stated that there was none. (*id.*)

Defendant argues that counsel should have moved to suppress these statements or

objected to them at trial because the Government used the statement to argue that the

cash in Defendant's possession at the time of his arrest was the result of illicit activity.

Miranda warnings are not required where a suspect is simply taken into custody.

Rather, the Miranda safeguards come into play when the police engage in express

questioning or other words or actions that would be "reasonably likely to elicit an

incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300 (1980); United

States v. McKenzie, 132 F. App'x 788, 790 (11th Cir. 2005). Questions necessary for

the completion of the DEA 202 Personal History Report arguably fall under the "booking

exception" which provides that asking routine questions reasonably related to the

police's administrative concerns, such as general biological data, does not constitute

interrogation under Miranda. *See* Pennsylvania v. Muniz, 496 U.S. 582, 601–602

(1990); United States v. Pacheco-Lopez, 531 F.3d 420, 423–424 (6th Cir. 2008); United

States v. Booth, 669 F.2d 1231, 1238 (9th Cir. 1981); United States v. Menichino, 497

---

[6] The court obtained and reviewed a copy of a blank DEA 202 form during the preparation of this recommendation. The form is titled "Personal History Report" and, relevant to this claim, is used to compile basic background information collected at the time of an arrest. It provides a space to record basic biographical and descriptive information including a physical description, the individual's occupation and place of employment, and family information.

F.2d 935 (5th Cir. 1974). Defendant's response to a question about the fact of his employment is not in and of itself incriminating. *Cf.* United States v. Lin, 2007 WL 405029 (N.D. Cal. 2007) (question about defendant's place of employment was directly relevant to investigation where investigators wanted defendant to write the name of his employer for the purpose of comparing handwriting). Counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Sneed v. Florida Dep't of Corrections, 496 F. App'x 20 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence). Defendant has presented no authority suggesting that Defendant should have received Miranda warnings before providing the basic information required for completion of the DEA 202. Consequently, there was no basis for counsel to object to the introduction of this testimony and therefore counsel was not ineffective for his failure to do so.

Defendant also challenges the introduction of statements he gave to investigators after he was read his Miranda rights, claiming that his waiver of his Miranda rights was involuntary. The Government asserts that Defendant's complaint

that he did not understand his <u>Miranda</u> rights is frivolous in light of his many prior arrests, and that had counsel moved to suppress Defendant's statements, such a motion would have been unsuccessful.

At trial, Tommy Ford of the Florida Department of Law Enforcement, Panama City Field Office testified about his role in the July 24 investigation of Defendant and co-defendant Devane. (doc. 80 at 95–108.) Ford, who was present at the time of the arrest, conducted a post-arrest interview of Defendant at the Drug Enforcement Administration ("DEA") office in Tallahassee. Several officers with other agencies were present or went in and out of the room during the interview, although Ford led the questioning. Ford testified that he read Defendant his <u>Miranda</u> rights before the interview, as well as a form titled "Waiver of Rights" which Defendant signed. (*id*. at 97, 109.) Defendant's signature on the form was witnesses by two other officers who were present, Special Agent Tom McGraw with the Florida Department of Law Enforcement and Investigator Dion Saint with the Bay County Sheriff's Office. (*id*. at 98.) Special Agent McGraw also testified that the form was signed at the beginning of the interview. (*id.* at 109–110.)

Defendant's recollection of events was that law enforcement never read him his rights, but rather that they just instructed him to sign a paper, which was actually the <u>Miranda</u> form. (doc. 80 at 126.) He said that he signed the paper without reading it, believing that if he did so, he would be able to leave, also suggesting that this happened "at the end." (*id.* at 126, 127, 136–137.) Defendant's assertions, even accepted as true, are not equivalent to proof that his waiver of his rights was

involuntary. There has been no evidence or suggestion that Defendant ever indicated that he did not want to speak to law enforcement or any suggestion that he attempted to stop the interview at any point after it began.

Defendant's challenge now assumes that the testimony of the law enforcement officers was false, and that his version or recollection of events was accurate. This position was rejected by the jury through its verdict, as well as by the court, which credited the testimony of the law enforcement agents over that of Defendant. The court did not, of course, have the occasion to address the voluntariness of Defendant's post-Miranda statement, which again would have required a credibility determination. However, based on the evidence and testimony at trial, and factoring in Defendant's self interest and his past history in dealing with law enforcement, it is a virtual certainty that a suppression hearing would not have yielded a favorable result for the defense. Defendant has suggested no other evidence or argument that could have been used to bolster his position that his post-Miranda statement to law enforcement should have been suppressed.

Furthermore, in light of the circumstantial evidence presented against Defendant at trial, he has failed to show that any alleged Miranda error affected the outcome of the proceedings. *See* United States v. Ware, 420 F. App'x 886, 892 (11th Cir. 2011) (citing United States v. Henderson, 409 F.3d 1293, 1307 (11th Cir. 2005); United States v. Turner, 474 F.3d 1265, 1279–80 (11th Cir. 2007)). The court thus finds that counsel was not constitutionally ineffective for his failure to challenge it.

### *Ground Two: Failure to object to improper vouching*

Defendant claims that counsel failed to object to the Government's improper "vouching" for police witnesses during closing and rebuttal arguments. He asserts that this was prejudicial as these were the only witnesses against Defendant at trial.

Vouching occurs when the jury could reasonably believe that the prosecutor was indicating a "personal belief" in the witness's credibility. United States v. Lopez, 590 F.3d 1238, 1257 (11th Cir. 2009); *see also* United States v. Arias-Izquierdo, 449 F.3d 1168, 1177–78 (11th Cir. 2006); United States v. Cano, 289 F.3d 1354, 1365 (11th Cir. 2002) (quotations omitted); United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996); United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983). The court must consider whether: (1) the prosecutor placed the prestige of the government behind the witness by making explicit personal assurances of the witness's credibility; or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not presented to the jury supports the witness's testimony. United States v. De La Cruz Suarez, 601 F.3d 1202 (11th Cir. 2010); Cano 289 F.3d at 1365. A prosecutor is permitted to comment on the credibility of a witness, often a key issue in a case, so long as he does not personally vouch for a witness's credibility or bolster the witness's credibility through the reputation of the government. Lopez, 590 F.3d at 1257; United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991). He may, for instance, argue that "the fair inference from the facts presented is that a witness had no reason to lie." Hernandez, 921 F.2d at 1573 (quoting United States v. Eley, 723 F.2d 1522,

1526 (11th Cir. 1984) (quoting United States v. Bright, 630 F.2d 804, 824 (5th Cir.

1980))).  This is precisely what happened in this case.

The Government gave a brief but compelling closing argument during which it

contrasted the testimony of law enforcement officers who, it argued, had no motivation

to lie, with that of Defendant, a man who "according to his own testimony, has never

held a steady job in his life, despite the fact that he had $200 when arrested . . . has

eight felony convictions and a misdemeanor for lying to the police all within the last ten

years [and] has already demonstrated his willingness to commit crimes in order to avoid

the consequences for the other crimes that he committed." (doc. 80 at 150, 151.)

Defendant's characterization of the arguments in question as "vouching" is

disingenuous. Simply put, there was no impropriety in the Government's arguments,

counsel was not constitutionally ineffective for his failure to make a frivolous objection,[7]

and Defendant is not entitled to relief.

### *Ground Three: Failure to investigate and call witnesses for the defense*

Defendant claims that he informed his counsel about several witnesses who

could vouch for his whereabouts before his arrest and as to his general character.

Although he did not identify these witnesses or the substance of their testimony in his

---

[7] Counsel is not ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Chandler v. Moore, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence).

original motion, Defendant submitted the affidavits[8] of Margie Brown, Lamont Gavin and William Ratliffe[9] with his supplemental response. (doc. 124 at 20–24.) Defendant claims that each witness would testify that Defendant was not "handling any business" in their company during the day of his arrest, thus proving that he was not engaged in a conspiracy with Benson Devane.

The fact that Defendant was not selling drugs on the date of his arrest, even if true, does not disprove the existence of a conspiracy, although it would arguably contradict law enforcement testimony about what Defendant told them about his activities earlier that day. The witnesses' statements, however, do not prove Defendant's claim. Each witness states that he or she was around Defendant during the "evening" of July 24, 2008 and that he or she never saw Defendant sell any drugs. Even if the court liberally interprets the term "evening," Defendant's own testimony contradicts these statements. At trial, he stated that he got a ride to Lamont Gatlin's house somewhere around 10:00 that morning, but he also testified that he did not remain there all day. (doc. 80 at 120–121.) Defendant explained that he spent the day playing video games and going "back and forth to the girl Tisha house that I mess with up the road." (*id*. at 121.) Therefore, because the Defendant was not only at his brother's house, but also was visiting "other people who are in the neighborhood" (*id*. at 121–122), his activities could not have been continually observed by the three

---

[8]Although the declarations are not notarized, they are sworn under penalty of perjury.

[9]Defendant's reference to the affidavit of Solomon Parmore is mistaken as there is no affidavit from Mr. Parmore (doc. 124 at 6).

declarant-witnesses.  As such, their statements cannot provide conclusive proof that Defendant did not sell any drugs on the date in question or that the Defendant was not involved in a conspiracy.

Defendant also claims that William Ratliff could have testified that he gave Defendant the $200 that was in Defendant's possession upon his arrest, therefore rebutting the suggestion that the unemployed Defendant had obtained the money from selling drugs.  The fact that Defendant had money in his possession at the time of his arrest was presented through the testimony of Special Agent Clear who stated that Defendant had $200.58 on his person at that time. (doc. 80 at 81, 90.)  Because Defendant testified in his own behalf at trial and was asked whether he had the money in his possession (*id*. at 133), Defendant could have testified that William Ratliff gave him the money. Defendant, however, did not do so.  It follows that because Defendant did not offer this information at trial – despite having an opportunity to do so –  counsel cannot be faulted for failing to call this witness.

Defendant also argues in his supplement that the evidence in this case showed only that co-defendant Devane had a buyer-seller relationship with an individual unknown to Defendant and that this evidence is legally insufficient to show a conspiratorial agreement to distribute drugs. (doc. 124 at 11.)  Defendant claims that his counsel was constitutionally ineffective for failing to request a buyer-seller instruction.  This argument is unrelated to Defendant's other claims and thus does not relate back to his initial motion.  Even if it were timely, the evidence at trial taken in the light most favorable to the Government does not support such an instruction.

For the foregoing reasons, the court finds that Defendant has failed to show that he was prejudiced by counsel's alleged failure to investigate his case, or to present the testimony of the identified witnesses.[10]

### *Ground Four: Failure to advise Defendant not to testify at trial*

Lastly, Defendant asserts that counsel's performance was constitutionally deficient because counsel advised Defendant to testify at trial, which led to the introduction of highly prejudicial impeachment evidence regarding Defendant's eight prior convictions, including one for lying to police officers.   Defendant claims that counsel told him he would have to testify because there were no other witnesses to explain his version of the facts.  The evidence at trial clearly showed that Defendant was not the target of this investigation that led to his arrest.  Defendant claims that there is a strong probability that absent his testimony the jury may have acquitted him simply because it may have believed he did not join the conspiracy or that he did not possess the drugs with the intent to distribute them. In his reply, he argues a slightly different angle and asserts that counsel should have advised him not to testify because counsel should have known that his testimony "would be incredible, if not perjurious (sic)." (doc. 123 at 3.)

---

[10] The undersigned notes that the Government states that it discussed the motion to vacate with Defendant's former attorney, Assistant Federal Public Defender William R. Clark, Jr. Esq. and that "Mr. Clark's affidavit is being prepared for filing." (doc. 118 at 8.) No such affidavit was ever filed, despite this representation and despite defense counsel's observation of the Government's omission in his reply.  Lacking a sworn statement from counsel, the Government's description of the conversation with counsel was not considered as evidence in support of its position.

During a jury recess at trial, the court advised Defendant that he had the right to testify or to not testify, and that if he did not testify the jury would be instructed that it could not draw an inference against him. (doc. 80 at 93.) Conversely, if Defendant chose to testify, the court informed him, the jury would be instructed to evaluate his testimony just as it evaluated the testimony of every other witness. (*id*.) The Court advised Defendant to speak with his attorney about whether or not to testify, and to consider counsel's advice, but that the decision would be Defendant's. (*id*.)

Defendant's criminal history was presented to the jury on direct examination. (doc. 80 at 121.) The jury already was aware of Defendant's 2003 conviction for possession of cocaine with the intent to distribute because the conviction was admitted into evidence for the purpose of showing knowledge or intent. (doc. 80 at 117–118.)

There is no evidence in the record concerning counsel's discussions with the Defendant about this matter. A review of the trial transcript, nonetheless, discloses that the Government presented abundant evidence supporting the jury's verdict, both with respect to the elements of conspiracy as well as the charge of possession with intent to distribute. Thus, the only way to present Defendant's version of event to the jury was through Defendant's testimony and thus that the decision for Defendant to testify may have been his best chance for an acquittal.[11] Defendant cannot now challenge counsel's decision merely because he is dissatisfied with the outcome of the trial and

---

[11]The court does not credit the Government's representation that defense counsel also told his client that if he testified, the jury would hear about his criminal record, because the Government has failed to supply Mr. Clark's affidavit. (*see* doc. 118 at 8–9.)

he believes, with the benefit of hindsight, that a different result may have occurred if he

had not testified.

Additionally, Defendant's decision to testify apparently had no tangible impact on

sentencing.  Although the guidelines calculations reflected a two level adjustment for his

perjured testimony, this adjustment made no difference in light of Defendant's

adjustment for being a career offender.                                                         .

## CONCLUSION

For all of the foregoing reasons, the court concludes that Defendant has failed to

show that any of the claims raised in his motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has the Defendant shown that

an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in

its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of

a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000)

(explaining how to satisfy this showing) (citation omitted).  Therefore, it is also

recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 111) should be **DENIED**.

2.  A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 16th  day of October, 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**